IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

YVONNE GARCIA, individually and on behalf of other
similarly situated individuals,

    Plaintiff,

v.                                                                       Civ. No. 21-1023 KG/JMR

REPUBLIC UNDERWRITERS INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This case represents the latest in a series of putative class action claims challenging New Mexico's underinsured motorist insurance scheme and requires the Court to determine whether the New Mexico Supreme Court's reasoning in *Crutcher v. Liberty Mutual Insurance Co.*, 2022-NMSC-001, extends beyond the minimum limits circumstances of that case. Having considered the briefing and applicable law, and being otherwise fully advised, the Court concludes that *Crutcher* does not apply to non-minimums policies and, therefore, grants Defendant Republic Underwriters Insurance Company's (Republic) Motion to Dismiss (Doc. 18).

The following facts are assumed true for purposes of this Motion and viewed in the light most favorable to the nonmovant. *Santa Fe Alliance for Public Health and Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (citation omitted). Republic sold Plaintiff, Yvonne Garcia, personal automobile insurance on two vehicles with liability limits of $100,000 per person and $300,000 per accident. Ms. Garcia also carried uninsured/underinsured motorist (UM/UIM) coverage. Because Ms. Garcia had two covered vehicles, her UM/UIM limits stacked to $200,000 per person and $600,000 per accident.

On October 6, 2018, Ms. Garcia was involved in a car accident. The tortfeasor's insurer paid Ms. Garcia $100,000.00, representing the limit of the tortfeasor's liability insurance. Ms. Garcia then made a claim with Republic for UM/UIM coverage. Republic paid Ms. Garcia $100,000.00 in UM/UIM benefits, for a total recovery of $200,000.00. Republic invoked the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 1985-NMSC-073, to subtract the payment Ms. Garcia received from the tortfeasor's insurance company from the payment due to its own policyholder. *See also Crutcher*, 2022-NMSC-001, ¶ 9. Ms. Garcia asserts her injuries exceed $200,000.00.

Ms. Garcia contends that Republic was negligent, engaged in false and misleading trade practices, violated the New Mexico Unfair Insurance Practices Act, breached the covenant of good faith and fair dealing, and made negligent misrepresentations by selling her illusory UM/UIM coverage and not explaining the *Schmick* offset. She seeks reformation of the insurance policy to receive the full benefit of UM/UIM limits, declaratory judgment, injunctive relief, and class certification for all persons who carried UM/UIM coverage through Republic. Ms. Garcia proposes to define the class as:

> All persons (and their heirs, executors, administrators, successors, and assigns) from whom Defendant collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendant and that purported to provide underinsured motorist coverage on the fact of its application and declaration pages, but which effectively no underinsured motorists coverage and/or misleading underinsured coverage, reflected on Defendant's declaration page, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).

(Doc. 17) at ¶ 44. Ms. Garcia also asserts the following subclass:

> All Class Members (and their heirs, executors, administrators, successors, and assigns) where an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendant and that purported to provide the underinsured motorist coverage on the face of its application and declaration pages, but which in fact provides no underinsured motorists coverage and/or misleading

underinsured coverage because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available and would be or were denied those benefits by Defendant due to the *Schmick* offset.

*Id.* at ¶ 45.

Ms. Garcia attached the policy to her Amended Complaint. (Doc. 17-1). Relevantly, the policy includes an "Uninsured Motorists Coverage – New Mexico (Stacked)" endorsement. *Id.* at 20–23. That endorsement includes the following passages under "Insuring Agreement":

> A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an:
>    1. "Uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury":
>       a. Sustained by an "insured"; and
>       b. Caused by an accident;
>    2. "Uninsured motor vehicle" or "underinsured motor vehicle" because of "property damage" caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle". With respect to damages an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle", we will pay under this coverage only if Paragraph 1. or 2. below applies:
>    1. The limits of liability under any liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or
>
> . . .
>
> D. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the "insured" for Uninsured Motorists Coverage under this policy and any other policy.
>
> . . .

*Id.* at 20. And the following under "Limit of Liability":

3

> C. With respect to damages caused by an accident with an "underinsured motor vehicle", the limit of liability shall be reduced by all sums paid on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part **A** of the policy.

*Id.* at 22.

I. *Standard of Review*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Conclusory allegations of liability, without supporting factual content, are insufficient. "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Court, sitting in diversity, applies New Mexico substantive law. In doing so, the Court must either follow the decisions of the New Mexico Supreme Court, or attempt to predict what the New Mexico Supreme Court would do. *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011). The Court may consider the insurance policy as it is referred to in the complaint without converting Republic's motion to one for summary judgment under Rule 56 because it is central to the Plaintiff's claims and the parties do not dispute its authenticity. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

II. *Analysis*

Under New Mexico's Mandatory Financial Responsibility Act, every driver must carry an "absolute minimum amount" of auto liability insurance of at least $25,000 per person and

4

$50,000 per occurrence and UM/UIM coverage of at least the same amount. *Crutcher*, 2022-NMSC-001, ¶ 6 (citing NMSA 1978, § 66-5-215(A)(1)-(2); § 66-5-301(A)). Uninsured motorist (UM) insurance coverage protects drivers who are damaged by a tortfeasor who does not have automobile insurance. *See* NMSA 1978, § 66-5-301(A); *Crutcher*, 2022-NMSC-001, ¶ 5. Underinsured motorist (UIM) "insurance coverage protects drivers who are hit by a tortfeasor who does not have enough auto insurance to cover the cost of the driver's injuries and damages." *Crutcher*, 2022-NMSC-001, ¶ 5 (citing NMSA 1978, § 66-5-301(B)). Pursuant to statute, a tortfeasor is underinsured when there is a difference between the injured driver's UM/UIM coverage and the tortfeasor's liability insurance.[1] *Id.* (citing NMSA 1978, § 66-5-301(B)).

In *Crutcher*, the New Mexico Supreme Court found that UIM coverage on a policy that provides minimum UM/UIM limits of $25,000 per person and $50,000 per accident was "illusory" because "it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." 2022-NMSC-001, ¶ 2. The *Schmick* offset rule also made it "practically impossible" for minimally insured motorists to collect UIM insurance under a statutory minimum policy because the deduction of the $25,000 received from the tortfeasor's insurance company from the $25,000 due from the policyholder's insurer balances out to zero. *Id.* at ¶ 20. As a result of the *Crutcher* decision, an insurer must adequately disclose "that a purchase of the statutory minimum of UM/UIM insurance may come with the counterintuitive exclusion of UIM insurance if the

---

[1] New Mexico adopted the "gap theory" of UIM coverage. Other states employ a "floating layer" theory, whereby an injured driver could recover the full extent of a tortfeasor's liability policy, and then the limits of the injured driver's UIM policy. Here, that would mean Ms. Garcia could have received $100,000 from the tortfeasor, *plus* an additional $200,000 from her UIM carrier. As the New Mexico Supreme Court has explained, the decision to employ the gap theory or the floating layer rests squarely with the state legislature. *See Crutcher*, 2022-NMSC-001, ¶¶ 19–20; *Schmick*, 1985-NMSC-073, ¶¶ 29–31.

insured is in an accident with a tortfeasor who carries minimum liability insurance." *Id.* at ¶ 32. Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage. *Id.* at ¶ 33.

Ms. Garcia, individually and on behalf of the proposed class, argues that Republic's "boilerplate forms and ambiguous policy definitions failed to properly inform [her] about the offset described in *Schmick* … and did not meet her reasonable expectations of being properly insured in the event she sustained significant injuries." (Doc. 17) at ¶ 22. Plaintiff further alleges that Republic failed to "inform her of how [UIM] coverage is illusory and/or misleading in the event of a covered occurrence involving an underinsured driver." *Id.* at ¶ 26.

Republic contends that *Crutcher* cabined its analysis to the unique factual circumstance of a minimum limits UM/UIM policy, which, as a matter of law, could never include "underinsured" coverage under New Mexico statutes, and that the New Mexico Supreme Court never intended to hold that the *Schmick* offset renders all UIM policies "illusory" or "misleading." Republic argues that, even if the New Mexico Supreme Court did intend such a broad holding, its policy language adequately advises a reasonable policyholder about the *Schmick* offset. For purposes of this case, Republic stipulates that *Crutcher* applies retroactively. (Doc. 21) at 3–4.

Republic now moves to dismiss the Amended Complaint on the basis that it complied with New Mexico law and adequately disclosed the *Schmick* offset in the policy.

The New Mexico Supreme Court has determined that "[i]t is apparent from the statutory definition that the Legislature intended the amount of underinsurance benefits due would differ depending on the relative amounts of coverage purchased by the tortfeasor and the insured." *Schmick*, 1985-NMSC-073, ¶ 21. The *Schmick* Court further "observe[d] that the Legislature, in

6

defining an underinsured motorist, set the minimum and maximum on the amount an insured can collect from his underinsured motorist insurance carrier." *Id.* at ¶ 24 (citing NMSA 1978, § 66-5-301(B)).

From 1985 through the present, New Mexico courts have reiterated that New Mexico adopted the "gap theory" of UIM coverage. *Crutcher*, 2022-NMSC-001, ¶ 28. In *Crutcher*, the New Mexico Supreme Court held that "minimum UM/UIM coverage is misleading because policyholders are not adequately informed that they are not eligible to receive UIM coverage pursuant to the Mandatory Financial Accountability Act and the corresponding offset rule articulated in *Schmick*" and that insurers must "adequately disclose the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy," and assuming that an adequate disclosure is made, the insurer may charge a premium for such coverage. *Id.* at ¶¶ 31, 33.

Ms. Garcia relies on a series of cases from this District for the proposition that Republic's "business practices of collecting premiums and denying UIM [Bodily Injury] benefits for what [Republic] knew to be worthless UIMBI coverages, even at higher limits," are deceptive. (Doc. 20) at 3 (citing *Belanger v. Allstate Fire and Cas. Ins. Co.*, 588 F. Supp. 3d 1249 (D.N.M. 2022); *Palmer v. State Farm Mut. Auto. Ins. Co.*, 584 F. Supp. 3d 1018 (D.N.M. 2022); *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045 (D.N.M. 2019); *Schwartz v. State Farm Mut. Auto Ins. Co.*, No. 1:18-cv-00328-WJ-SCY, 2018 WL 4148434 (D.N.M. 2018)).

These cases are distinguishable because they all involve named plaintiffs with minimum limits UM/UIM insurance involved in accidents with tortfeasors carrying minimum limits liability insurance. Moreover, the only case to squarely address non-minimum limits UIM policies prognosticated that the New Mexico Supreme Court would conclude "that higher-than-

minimum limits UIM coverage is not illusory" in the sense contemplated by *Crutcher*. *Bhasker*, 361 F. Supp. 3d at 1143.[2]

Non-minimum limits policies do not fall into the same statutory crevice addressed by *Crutcher* and do not involve the same type of "illusory" coverage. Indeed, a non-minimum limits policy, subject to the *Schmick* offset, functions exactly as intended by the New Mexico Legislature. The Court concludes that non-minimum limits UIM policies are not "illusory," within the meaning of *Crutcher* and *Crutcher*'s analysis does not extend to the non-minimum limits context.

Unlike *Crutcher* and the minimum-limits cases cited by Ms. Garcia, Ms. Garcia carried $200,000 in UIM insurance, was involved in an accident with a tortfeasor carrying $100,000 in liability insurance, and in fact received $100,000 in UIM benefits. That is, Ms. Garcia's UIM policy made her eligible to receive UIM coverage pursuant to the Mandatory Financial Accountability Act. Put another way, Ms. Garcia's UIM policy was not "illusory" or misleading due to the *Schmick* offset because she actually received UIM benefits.

Ms. Garcia's claims are predicated on the notion that Republic sold her "illusory" or misleading UIM insurance. The Court determines, as a matter of law, that it did not. Because Ms. Garcia was offered and obtained the underinsurance coverage she purchased, which was neither illusory nor misleading, her claims fail as a matter of law.

For these reasons, the Court grants Republic's Motion to Dismiss (Doc. 18) and dismisses all claims against Republic with prejudice.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

---

[2] While *Bhasker* was decided before *Crutcher*, it uses "illusory" in the same way that *Crutcher* did, that is, as minimum limits UIM policies conferring no financial benefit on insureds.