IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

YVONNE GARCIA, Individually and on behalf of
other similarly situated individuals,

    Plaintiff,

vs.                                                      Civ. No. 21-1023KG/JMR

REPUBLICAN UNDERWRITERS INSURANCE
COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before this Court on Plaintiff's Motion to Alter or Amend the Judgment ("the Motion"), or alternatively, stay the case. (Doc. 26). It is fully and timely briefed. (Docs. 26, 27, 28).

In this case, Plaintiff complains that although she received $200,000, which was the exact amount of her underinsured motorist insurance coverage ("UIM"), she is not getting as much as she thought she would get, because some of that $200,000 came from the tortfeasor and not from her insurer. She contends the statutorily allowed offset for the tortfeasor's contribution, which was explicitly disclosed in easy-to-understand language, rendered this aspect of her policy and coverage illusory and rendered the $200,000 listed on the declaration page a misrepresentation. In making this argument, Plaintiff relies on caselaw where insureds purchased the statutory minimum amount of UIM ($25,000) and hence, upon receiving $25,000 from a tortfeasor, were not provided *any recovery from their insurer* for their UIM coverage. These facts not only were important and dispositive, but also distinguish this matter at bar. Plaintiff did not purchase the

1

statutory minimum, and she received $100,000 from her underinsured motorist coverage from her insurer after receiving $100,000 from the at-fault driver.

Similarly, although Plaintiff argues the declaration page indicating that she would receive $200,000 is a misrepresentation of the $200,000 she received because she thought she would get $200,000 in addition to what she got from a driver responsible for any accident, her policy explicitly disclosed in clear language that her policy required the insurer to reduce the amount on the declaration page by the amount Plaintiff recovered from a responsible tortfeasor. As such, there is nothing for a jury to decide, as no reasonable jury could find any misrepresentation in this matter.

For these reasons, as discussed further herein, Plaintiff's Motion to Amend or Alter the Judgment or alternatively stay the case is denied.

I.   *Background*

   A.   *Factual Background*

The following facts were assumed true and viewed in the light most favorable to Plaintiff for purposes of Defendant Republic Underwriters Insurance Company's (Republic) Motion to Dismiss (Doc. 18). *Santa Fe Alliance for Public Health and Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (citation omitted). Republic's Motion to Dismiss was granted by this Court in the Memorandum Opinion and Order (Doc. 24, "the MOO") subject to Plaintiff's at bar Motion to Alter or Amend the Judgment. (Doc. 26). And the following facts again are assumed true for purposes of this Motion and viewed in the light most favorable to Plaintiff. *Santa Fe Alliance for Public Health and Safety*, 993 F.3d at 811 (citation omitted).

Republic sold Plaintiff, Yvonne Garcia, personal automobile insurance on two vehicles with liability limits of $100,000 per person and $300,000 per accident. (First

Amended Complaint, Doc. 17) at ¶¶ 8, 10-13. Ms. Garcia also carried uninsured/underinsured motorist (UM/UIM) coverage. *Id.* at ¶ 14. Because Ms. Garcia had two covered vehicles, her UM/UIM limits stacked to $200,000 per person and $600,000 per accident. *Id.*

On October 6, 2018, Ms. Garcia was involved in a car accident. *Id.* at ¶ 30. The tortfeasor's insurer paid Ms. Garcia $100,000.00, representing the limit of the tortfeasor's liability insurance. *Id.* at ¶ 35. Ms. Garcia then made a claim with Republic for UM/UIM coverage. *Id.* at ¶ 38. Republic paid Ms. Garcia $100,000.00 in UM/UIM benefits, for a total recovery of $200,000.00. *Id.* at ¶ 40. Republic invoked the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 1985-NMSC-073, to subtract the payment Ms. Garcia received from the tortfeasor's insurance company from the payment due to its own policyholder. *Id.* at ¶ 41. *See also Crutcher*, 2022-NMSC-001, ¶ 9. Ms. Garcia asserts her injuries exceed $200,000.00. (First Amended Complaint, Doc. 17) at ¶ 33.

Ms. Garcia contends that Republic was negligent, engaged in false and misleading trade practices, violated the New Mexico Unfair Insurance Practices Act, breached the covenant of good faith and fair dealing, and made negligent misrepresentations by selling her illusory UM/UIM coverage and not explaining the *Schmick* offset. *See e.g., id.* at ¶¶ 66, 69, 79, 91, 106, 113. She seeks reformation of the insurance policy to receive the full benefit of UM/UIM limits, declaratory judgment, injunctive relief, and class certification for all persons who carried UM/UIM coverage through Republic. *See e.g., id.* at ¶¶ 100. Ms. Garcia proposes to define the class as:

> All persons (and their heirs, executors, administrators, successors, and assigns) from whom Defendant collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendant and that purported to provide underinsured motorist coverage on the face of its

> application and declaration pages, but which effectively provides no underinsured motorists coverage and/or misleading underinsured coverage, reflected on Defendant's declaration page, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).

*Id.* at ¶ 44. Ms. Garcia also asserts the following subclass:

> All Class Members (and their heirs, executors, administrators, successors, and assigns) where an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendant and that purported to provide the underinsured motorist coverage on the face of its application and declaration pages, but which in fact provides no underinsured motorists coverage and/or misleading underinsured coverage because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available and would be or were denied those benefits by Defendant due to the *Schmick* offset.

*Id.* at ¶ 45.

Ms. Garcia attached the policy to her Amended Complaint. (Doc. 17-1). Relevantly, the policy includes an "Uninsured Motorists Coverage – New Mexico (Stacked)" endorsement. *Id.* at 20–23. That endorsement includes the following passages under "Insuring Agreement":

4

> A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an:
>
>   1. "Uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury":
>
>      a. Sustained by an "insured"; and
>
>      b. Caused by an accident;
>
>   2. "Uninsured motor vehicle" or "underinsured motor vehicle" because of "property damage" caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle". With respect to damages an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle", we will pay under this coverage only if Paragraph 1. or 2. below applies:
>
>   1. The limits of liability under any liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or
>
> . . .
>
> D. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the "insured" for Uninsured Motorists Coverage under this policy and any other policy.
>
> . . .

*Id.* at 20. And the following under "Limit of Liability":

> C. With respect to damages caused by an accident with an "underinsured motor vehicle", the limit of liability shall be reduced by all sums paid on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

5

*Id.* at 22.

### B. Procedural Background

On December 30, 2020, Plaintiff commenced this cause of action by filing a class action complaint in the Second Judicial District Court for the State of New Mexico against the sole defendant, Republic. (Doc. 1) at 1. On October 21, 2021, Republic removed Plaintiff's complaint to this Court. *Id.* On January 28, 2022, Plaintiff filed a first amended complaint. (Doc. 17). Ms. Garcia, individually and on behalf of the proposed class, argued that Republic's "boilerplate forms and ambiguous policy definitions failed to inform [her] properly about the offset described in *Schmick* … and did not meet her reasonable expectations of being properly insured in the event she sustained significant injuries." (Doc. 17) at ¶ 22. Plaintiff further alleged that Republic failed to "inform her of how [UIM] coverage is illusory and/or misleading in the event of a covered occurrence involving an underinsured driver." *Id.* at ¶ 26.

On February 28, 2022, Republic filed a motion to dismiss. (Doc. 18). Republic contended that *Crutcher* cabined its analysis to the unique factual circumstance of a minimum limits UM/UIM policy, which, as a matter of law, could never include "underinsured" coverage under New Mexico statutes, and that the New Mexico Supreme Court never intended to hold that the *Schmick* offset renders all UIM policies "illusory" or "misleading." Republic argued that, even if the New Mexico Supreme Court did intend such a broad holding, its policy language adequately advises a reasonable policyholder about the *Schmick* offset.

Plaintiff filed a response on March 28, 2022 (Doc. 20) and Republic replied on April 11, 2022. (Doc. 21). For purposes of this case, Republic stipulated that *Crutcher* applies retroactively. (Doc. 21) at 3–4. Republic moved to dismiss the Amended Complaint on the

basis that it complied with New Mexico law and adequately disclosed the *Schmick* offset in the policy.

On February 27, 2023, this Court granted Republic's Motion to Dismiss (Doc. 18) in a Memorandum Opinion and Order (Doc. 24, "the MOO") and entered final judgment (Doc. 25). In the MOO (Doc. 24), this Court concluded that *Crutcher v. Liberty Mutual Insurance Co.*, 2022-NMSC-001 does not apply to non-minimums policies and, therefore, granted Defendant Republic's Motion to Dismiss (Doc. 18). This Court utilized the following reasoning:

> The New Mexico Supreme Court has determined that "[i]t is apparent from the statutory definition that the Legislature intended the amount of underinsurance benefits due would differ depending on the relative amounts of coverage purchased by the tortfeasor and the insured." *Schmick*, 1985-NMSC-073, ¶ 21. The *Schmick* Court further "observe[d] that the Legislature, in defining an underinsured motorist, set the minimum and maximum on the amount an insured can collect from his underinsured motorist insurance carrier." *Id.* at ¶ 24 (citing NMSA 1978, § 66-5-301(B)).
> From 1985 through the present, New Mexico courts have reiterated that New Mexico adopted the "gap theory" of UIM coverage. *Crutcher*, 2022-NMSC-001, ¶ 28. In *Crutcher*, the New Mexico Supreme Court held that "minimum UM/UIM coverage is misleading because policyholders are not adequately informed that they are not eligible to receive UIM coverage pursuant to the Mandatory Financial Accountability Act and the corresponding offset rule articulated in *Schmick*" and that insurers must "adequately disclose the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy," and assuming that an adequate disclosure is made, the insurer may charge a premium for such coverage. *Id.* at ¶¶ 31, 33.
> Ms. Garcia relies on a series of cases from this District for the proposition that Republic's "business practices of collecting premiums and denying UIM [Bodily Injury] benefits for what [Republic] knew to be worthless UIMBI coverages, even at higher limits," are deceptive. (Doc. 20) at 3 (citing *Belanger v. Allstate Fire and Cas. Ins. Co.*, 588 F. Supp. 3d 1249 (D.N.M. 2022); *Palmer v. State Farm Mut. Auto. Ins. Co.*, 584 F. Supp. 3d 1018 (D.N.M. 2022); *Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045 (D.N.M. 2019); *Schwartz v. State Farm Mut. Auto Ins. Co.*, No. 1:18-cv-00328-WJ-SCY, 2018 WL 4148434 (D.N.M. 2018)).
> These cases are distinguishable because they all involve named plaintiffs with minimum limits UM/UIM insurance involved in accidents with tortfeasors carrying minimum limits liability insurance. Moreover, the only case to address squarely non-minimum limits UIM policies prognosticated that the New Mexico Supreme Court would conclude "that higher-than-minimum limits UIM coverage

7

>   is not illusory" in the sense contemplated by *Crutcher*. *Bhasker*, 361 F. Supp. 3d at 1143.
>
>   Non-minimum limits policies do not fall into the same statutory crevice addressed by *Crutcher* and do not involve the same type of "illusory" coverage. Indeed, a non-minimum limits policy, subject to the *Schmick* offset, functions exactly as intended by the New Mexico Legislature. The Court concludes that non-minimum limits UIM policies are not "illusory," within the meaning of *Crutcher* and *Crutcher*'s analysis does not extend to the non-minimum limits context.
>
>   Unlike *Crutcher* and the minimum-limits cases cited by Ms. Garcia, Ms. Garcia carried $200,000 in UIM insurance, was involved in an accident with a tortfeasor carrying $100,000 in liability insurance, and in fact received $100,000 in UIM benefits. That is, Ms. Garcia's UIM policy made her eligible to receive UIM coverage pursuant to the Mandatory Financial Accountability Act. Put another way, Ms. Garcia's UIM policy was not "illusory" or misleading due to the *Schmick* offset because she actually received UIM benefits.
>
>   Ms. Garcia's claims are predicated on the notion that Republic sold her "illusory" or misleading UIM insurance. The Court determines, as a matter of law, that it did not. Because Ms. Garcia was offered and obtained the underinsurance coverage she purchased, which was neither illusory nor misleading, her claims fail as a matter of law.

(Doc. 24, "the MOO") at 6-8 (footnote omitted).

On March 22, 2023, Plaintiff filed the instant Opposed Motion to Alter or Amend the Judgment ("the Motion"). (Doc. 26). It is fully and timely briefed. (Docs. 26, 27, 28).

II.   *Standards of Law*

A.   *Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Conclusory allegations of liability, without supporting factual content, are insufficient. "The allegations

8

must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

  *B. Diversity Jurisdiction and Substantive Law*

  This Court, sitting in diversity, applies New Mexico substantive law. In doing so, the Court must either follow the decisions of the New Mexico Supreme Court or attempt to predict what the New Mexico Supreme Court would do. *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011). The Court may consider the insurance policy as it is referred to in the complaint without converting Republic's motion to one for summary judgment under Rule 56 because it is central to the Plaintiff's claims and the parties do not dispute its authenticity. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

  *C. New Mexico's Mandatory Financial Responsibility Act*

  Under New Mexico's Mandatory Financial Responsibility Act, every driver must carry an "absolute minimum amount" of auto liability insurance of at least $25,000 per person and $50,000 per occurrence and UM/UIM coverage of at least the same amount. *Crutcher*, 2022-NMSC-001, ¶ 6 (citing NMSA 1978, § 66-5-215(A)(1)-(2); § 66-5-301(A)). Uninsured motorist (UM) insurance coverage protects drivers who are damaged by a tortfeasor who does not have automobile insurance. *See* NMSA 1978, § 66-5-301(A); *Crutcher*, 2022-NMSC-001, ¶ 5. Underinsured motorist (UIM) "insurance coverage protects drivers who are hit by a tortfeasor who does not have enough auto insurance to cover the cost of the driver's injuries and damages." *Crutcher*, 2022-NMSC-001, ¶ 5 (citing NMSA 1978, § 66-5-301(B)). Pursuant to statute, a tortfeasor is underinsured when there is a difference between the injured driver's UM/UIM coverage and the tortfeasor's liability insurance. *Id.* (citing NMSA 1978, § 66-5-301(B)).

New Mexico adopted the "gap theory" of UIM coverage. Other states employ a "floating layer" theory, whereby an injured driver could recover the full extent of a tortfeasor's liability policy, and then the limits of the injured driver's UIM policy. Here, that would have meant Ms. Garcia could have received $100,000 from the tortfeasor, *plus* an additional $200,000 from her UIM carrier. As the New Mexico Supreme Court has explained, the decision to employ the gap theory or the floating layer rests squarely with the state legislature. *See Crutcher*, 2022-NMSC-001, ¶¶ 19–20; *Schmick*, 1985-NMSC-073, ¶¶ 29–31.

In *Crutcher*, the New Mexico Supreme Court found that UIM coverage on a policy that provides minimum UM/UIM limits of $25,000 per person and $50,000 per accident was "illusory" because "it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." 2022-NMSC-001, ¶ 2. The *Schmick* offset rule also made it "practically impossible" for minimally insured motorists to collect UIM insurance under a statutory minimum policy because the deduction of the $25,000 received from the tortfeasor's insurance company from the $25,000 due from the policyholder's insurer balances out to zero. *Id.* at ¶ 20. As a result of the *Crutcher* decision, an insurer must adequately disclose "that a purchase of the statutory minimum of UM/UIM insurance may come with the counterintuitive exclusion of UIM insurance if the insured is in an accident with a tortfeasor who carries minimum liability insurance." *Id.* at ¶ 32. Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage. *Id.* at ¶ 33.

D. *Rule 59(e) Motion to Alter or Amend the Judgment*

According to the Tenth Circuit Court, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously

10

unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Pueblo of Jemez v. United States*, 63 F.4th 881, 897 (10th Cir. 2023) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). As such, "a motion for reconsideration is properly granted only when 'the court has misapprehended the facts, a party's position, or the controlling law.'" *Id.* (quoting *Servants of Paraclete*, 204 F.3d at 1012). Plaintiff does not argue the presence of an intervening change in the controlling law or new evidence previously unavailable, and instead, argues this Court erred. *See, e.g.,* (Doc. 26) at 1 ("Plaintiff contends that the court erred by dismissing all of Ms. Garcia's claims…"). The Tenth Circuit noted that it repeatedly has indicated "that these motions are 'not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.'" *Id.* (quoting *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (quoting *Servants of Paraclete*, 204 F.3d at 1012)). The Tenth Circuit Court noted that the "Supreme Court has emphasized the same point: 'Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Id.* (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008)) (other citation omitted).

    III.    *Rule 59(e) Motion to Alter or Amend the Judgment Analysis*

Although Plaintiff argues that this Court "overlooked the well-established New Mexico misrepresentation law and the New Mexico Supreme Court's interpretation of the remedial nature of the law," Plaintiff's arguments demonstrate the extent to which she misapprehends both this Court's decision as well as the relevant case law. For example, Plaintiff argues that "like Mr. Crutcher, Ms. Garcia will never receive the full amount of UIM coverage purported to exist on the face of her declaration page; That is the material misrepresentation." (Doc. 28) at 3. As this Court explained in the original MOO, the reason why Mr. Crutcher never would receive the

11

underinsured motorist (UIM) coverage purported to exist on the face of his declaration page and policy, and the reason why such coverage is "illusory," is because if a New Mexico registered driver purchases the minimum statutorily required coverage and is injured by an at-fault driver, the injured insured has *no* possibility to receive *any* monetary compensation from their own UIM coverage as it *always* would be offset by the coverage of the driver responsible for the accident (or their own uninsured motorist (UM) coverage). That *no* New Mexico insured driver *ever* could receive *any* benefit from their own UIM coverage if they purchase the statutory minimum UIM coverage is a very different situation from the one Plaintiff complains about here. In this case, Plaintiff complains that she is not getting as much as she thought she would get, not that there is no possibility for her to get anything at all, and not even that she did not get anything at all from this aspect of her policy and coverage (UIM). Such is the distinguishing fact between the circumstance at bar and the cases relied on by Plaintiff.[1] As Plaintiff did receive some payment from her insurance company because of this aspect of her policy (UIM), it is in no way illusory as discussed in *Crutcher*. *See Crutcher,* 2022-NMSC-001, at ¶ 30, 501 P.3d at 440 ("by choosing to purchase the statutory *minimum* amount of UM/UIM insurance, he or she will *never* receive the benefit of underinsured motorist coverage") (citations omitted) (emphasis added). Plaintiff did not purchase the statutory minimum, and she received $100,000 from her underinsured motorist coverage.

---

[1] *See, e.g.,* (Doc. 26) at 5 (citing *Bhasker v. FIC*, 361 F. Supp. 3d 1045, 1065, 17-cv-260-KWR (D.N.M. 2019) (insurer "deceptively sold UIM coverage in amounts equal to the statutory minimum limits liability coverage without properly advising her that such UIM coverage under New Mexico law was illusory").

Similarly, that Plaintiff received $100,000 from her insurance company when her declaration page indicates $200,000 is not a misrepresentation because she also received $100,000 from the driver responsible for the accident. Therefore, Plaintiff did receive $200,000. Although Plaintiff argues the declaration page indicating that she would receive $200,000 is a misrepresentation of the $200,000 she received because she thought she would get $200,000 in addition to what she got from a driver responsible for any accident, her policy explicitly disclosed in clear language that her insurance company would pay only if the "limits of liability under any liability bonds or policies applicable to the 'underinsured motor vehicle' have been exhausted by payment of judgments or settlements." (Doc. 17-1) at 20. As the policy explicitly disclosed exactly how the policy would operate and in fact did operate, there was no misrepresentation as a matter of law. As such, there is nothing for a jury to decide, as no reasonable jury could find any misrepresentation in this matter.

Plaintiff also argues that her policy includes "deceptive language indicating the insurer can reduce UIM coverage by any amounts recovered by any other source, not limited to an under insured motorist." (Doc. 26) at 10. As an initial matter, this Court agrees with Defendant that "this is an improper new argument raised for the first time on a Rule 59(e) motion that was not present in Plaintiff's opposition to Republic's motion to dismiss." (Doc. 27) at 9 (citations omitted). More importantly, however, this Court agrees with defendant that Plaintiff's argument "fails on the merits." *Id.* As noted by Defendant, "Plaintiff fails to recognize that the pertinent 'liability bonds or policies' language is tied to those 'applicable to the 'underinsured motor vehicle'' which is 'legally responsible' for the accident." *Id.* (citations omitted); *see also* (Doc. 27) at 10 (quoting (Doc. 17-1) at 20, 22 ("with respect to damages an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle,' we will pay under this

13

coverage only if… the limits of liability under *any liability bonds or policies applicable to the 'underinsured motor vehicle'* have been exhausted by payment of judgments or settlements… *'Underinsured motor vehicle' means a land motor vehicle or trailer of any type for which the sums of the limits of liability under all liability bonds or policies applicable at the time of the accident* is less than the sum of the limits of liability applicable to the 'insured' for uninsured motorist coverage under this policy and any other policy")). The policy language here does not appear to cover workman's compensation, the issue addressed in the old caselaw cited by Plaintiff, and does not raise issues from 50-year-old caselaw prior to the current statutory UM/UIM insurance regime interpreted by *Schmidt* and *Crutcher*. *See, e.g., Cont'l Ins. Co. v. Fahey*, 1987-NMSC-122, 106 N.M. 603, 604; *see also* (Doc. 27) at 10 (citing *Fahey*, 1987-NMSC-122, 106 N.M. at 604 (citing *American Mut. Ins. Co. v. Romero*, 428 F.2d 870 (10th Cir. 1970)). Furthermore, this Court agrees that Plaintiff is ignoring the fact that "the only offset at issue here, was for the $100,000 in liability coverage that the tortfeasor's insurance paid Plaintiff." (Doc. 27) at 10. Plaintiff's arguments are not persuasive. Plaintiff's Motion to Amend or Alter the Judgment (Doc. 26) shall be denied.

In the alternative to Plaintiff's Motion to Alter or Amend the Judgment, Plaintiff moves this Court "to stay this proceeding until fellow district courts and the New Mexico Supreme Court decide whether to accept a certified question of controlling law." (Doc. 26) at 1. Plaintiff acknowledges that this Court has broad discretion in managing its docket, including whether to issue stays for all or part of a proceeding. (Doc. 26) at 2-3 (citing *Clinton v. Jones,* 520 U.S. 681, 706 (1997) (other citation omitted)). Plaintiff has not persuaded this Court that there is any reasonable basis to delay issuing this Order or otherwise issue a stay in this matter.

In support of this request, Plaintiff contends that pending cases involve controlling questions of law and similar class action matters, and cites *Soleil v. Hartford*, 22-cv-00396-WJ-LF (D.N.M.), among other cases. (Doc. 26) at 2 (other citations omitted). In *Soleil*, the court was faced with a plaintiff's motion to lift a stay to certify to the New Mexico Supreme Court the following question:

> When an insurer fails to disclose to an insured that the insured can never recover the full amount of underinsured motorist coverage UIM stated on the policy, is the application of *Crutcher* regarding misrepresentations or failure to disclose applicable only to UM/UIM coverage at minimum limits or does it also apply to UM/UIM coverage at above minimum limits?

*Soleil*, 22-cv-00396-WJ-LF (Doc. 34) at 3 (citation omitted) (05/23/23 Order). This Court notes that in *Soleil*, the court was faced with the materially different situation in which the insured received no UIM from her insurer because her coverage was entirely cancelled out by the tortfeasor's insurance. (Doc. 26) at 32, ¶¶ 15, 18. Regardless, before denying the motion to lift the stay and striking the motion for certification, the court's order in *Soleil* included the following discussion:

> The Court is not inclined to grant Plaintiff's request. Counsel for Ms. Garcia—who are incidentally the same as counsel for Ms. Soleil—are free to appeal Judge Gonzales's ruling to the Tenth Circuit Court of Appeals. By so doing, plaintiffs' counsel will get a definitive answer on whether *Crutcher* applies to non-minimum limit UIM policies. The Court understands why certification might strike counsel as the more expeditious and judicially efficient means of resolving this question given that a *Crutcher*-related question is currently pending in the New Mexico Supreme Court. However, not all questions are appropriate for certification to the New Mexico Supreme Court and certification is certainly not designed to allow a party to circumvent an adverse federal district court ruling.
>
> This Court may certify a question of law to the New Mexico Supreme Court if "[1] the answer may be determinative of an issue in pending litigation in the certifying court and [2] the question is one for which answer is not provided by a controlling (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or (b) constitutional provision or statute of this state." Rule 12-607(A)(1) NMRA; *see also* NMSA 1978, § 39-7-4 (1997). When determining whether to certify a question, the Court must exercise "judgment and

15

> restraint." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). Certification is not appropriate for every "arguably unsettled question of state law." *Id.* The choice to certify "rests in the sound discretion of the federal court." *Kansas Jud. Rev. v. Stout*, 519 F.3d 1107, 1120 (10th Cir. 2008) (citation omitted).
>
> The Court agrees with Plaintiff Soleil that the question she seeks to certify would be determinative of an issue in her case; however, the Court disagrees that the question is one for which the answer is not provided by a controlling appellate opinion of the New Mexico Supreme Court. Judge Gonzales discerned the answer to Plaintiff Soleil's question by reading *Crutcher*— an appellate opinion of the New Mexico Supreme Court—and the Court sees no reason to second guess Judge Gonzales's determination by certifying the same question to the New Mexico Supreme Court. Plaintiff's counsel may continue fishing for certification to see if other district court judges, the Tenth Circuit, or the New Mexico Supreme Court will bite. In the meantime, this Court will not lift the stay to certify Plaintiff's question.

*Soleil*, 22-cv-00396-WJ-LF (Doc. 34) at 3-4 (citation omitted) (05/23/23 Order).

Final judgment has been entered in this case before this Court (Doc. 25); therefore, the question Plaintiff seeks to certify is not "determinative of an issue in pending litigation in the certifying court." Rule 12-607(A)(1) NMRA. Furthermore, this Court already has answered this question and Plaintiff is free to appeal this Court's ruling to the Tenth Circuit Court of Appeals. *Soleil*, 22-cv-00396-WJ-LF (Doc. 34) at 3. As noted by the court, "not all questions are appropriate for certification to the New Mexico Supreme Court and certification is certainly not designed to allow a party to circumvent an adverse federal district court ruling." *Id.*; *see also Pino*, 507 F.3d at 1236. This Court finds no need for a stay in this matter.

IV.    *Conclusion*

Plaintiff did not purchase the statutory minimum, and hence, she did not purchase a policy with an "illusory" component as contemplated in the caselaw cited by Plaintiff. Furthermore, she received $100,000 from her underinsured motorist coverage from her insurer after receiving $100,000 from the at-fault driver, making her UIM recovery $200,000, exactly

16

the amount on the declaration page of Plaintiff's policy, about which she complains. As such, there is nothing for a jury to decide, as no reasonable jury could find any misrepresentation in this matter.

For these reasons, and as discussed herein, Plaintiff's Motion to Amend or Alter the Judgment, or in the alternative, stay the case, (Doc. 26) is denied.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE